Good morning, everyone. Judge Bress and I warmly welcome back Judge Bennett from the District of Maryland sitting with us for the second day in a row. It's always a pleasure to be here, Judge Wynn. Thank you. The first three cases on the calendar have been submitted on the briefs and record. For the record, it's Alvarado v. Bondi, DiRapita v. Bondi, and Fatah with Taccorn v. Bondi, and I'm probably totally butchering that. But the first case up for argument is Ramirez v. Trusper. Good morning, Your Honors. May it please the Court, Sarah Fry on behalf of the appellant, Trusper Inc., doing business as Muesli. Your Honor, I would like to reserve two minutes of time for rebuttal. All right. The issue before this Court is not one that is new. In fact, the Court has heard several arguments over the past couple months involving the validity of arbitration agreements contained in Internet contracts. We have seen somewhat of an involvement of the case law beginning with the Berman line of cases where the focus was really on the font, the size, you know, the graphics, whereas in Keyball and this Court's decision in 2024, there became a recognition that the Court is not in the business of web design. The Court's not going to tell a website owner, you have to use blue font, you have to use purple font, you have to underline, you don't have to underline. Instead, we're going to look at the entirety of the webpage as well as the nature of the relationship between the parties. The district court's error here was in failing to give due consideration to the totality of the circumstances. And if you look at the totality of the circumstances given the nature of the relationship, this was a relationship to begin a telehealth relationship between Ramirez and Muesli. She signed up for an account. She was presented on several occasions. She actually visited the website on four occasions prior to purchasing and each time went through that enrollment process and each time was given notice and access to the terms of the participant agreement. As the Court knows, these are very fact-intensive exercises and I think... It is, it is. And looking at it from a practical perspective, I really struggle with this one because you have a pop-up window and it refers to some terms page. You have to get to the participation agreement, which is where the arbitration clause is, but to do that, you have to go through multiple steps from the step one. And so I found this case more confusing than some of our other published cases. Your Honor... What do we do with the fact that you have to struggle so much through so many steps to get to the participation agreement? Sure, Your Honor. I don't think there is a struggle and I think it's also important to recognize that the notice was not provided in just that pop-up in that one step. We provide notice in two areas. The first is that telehealth consent form, which is found at the record at 121. And as Your Honor pointed out, that is a clear, uncluttered page. The only underlining on that is to that telehealth consent. Telehealth consent begins with capital letters. It's directly above an action item, so it follows a natural flow. That pop-up is similarly uncluttered. The only underlying term is, the only hyperlink is the underlying terms. Excuse me, Ms. Frey, the telehealth consent referenced by Judge Wynn basically consents to the delivery of health care services, correct? Yes, it does. In that first part, once you click on the telehealth consent hyperlink, it takes you to the pop-up which says, by consenting to telehealth, you agree to all the terms. It basically relates to electronic communications, information technology, and others in terms of health issues, correct? No, Your Honor. If you look at the link, it says, at the very bottom of that pop-up, it says, by consenting to telehealth, you agree to consent to all of our terms and conditions. And that hyperlink takes you to that term, those terms and conditions. But it relates to delivery of health care services, does it not? Yes. Not in terms of participation agreement or arbitration. It relates to health care services as to that first step. Well, if you look at the, if you go, when you get to the participant agreement, if you look at that, it says, by using our services, you agree to all of our terms and conditions. And by accepting our services, you are bound by every single term and condition. Right. No, I mean, once you get to the participant, participation agreement, I think you're on strong ground. The issue is just the path to getting there. Yes. And I, and that's why I was getting to, so you have two, two different paths. You have that first one is the telehealth, through the telehealth consent form. And I think if you look at the cases, there's no case law that I could find that said, because you have to click one or two or three, you know, however many times, that is just positive. Right. It's not the matter of clicking, but the multiple steps is, contributes to the confusion. So I think, as Judge Bennett pointed out, when you say, okay, by consenting to telehealth, you are agreeing to the full terms and conditions. I think that because it's a pop-up window relating to telehealth, I think a reasonable user would think that that refers to telehealth-related terms and conditions, not the multiple steps that you'll go through to get to the participation agreement and be bound by the participation agreement, which then triggers the arbitration clause. That's the part that I find confusing. Well, and, and, and obviously, respectfully, I would disagree that it's, it's, I think, you know, the terms are clear. It says visit terms, and you agree to all of our terms. But even if you were, if I were to agree with you that, you know, that first step in the enrollment process was not reasonably conspicuous, that doesn't end the inquiry here, because we have a second notice given when she creates the account, and that's in ER 139, and that's step two, and it doesn't have to do with telehealth or anything, but that's a second. And in the Kavanaugh case, there was a similar situation where there was a first step, and the court said, you know, that first step is a little bit muddled. It's not as clear. But let's look at that second step. And the second step, the court found was clear and provided a pathway and found it was reasonably conspicuous. So I don't think the telehealth consent form is dispositive of this issue here, because we have that second step, where she actually did create an account. And if you look at that page again, it's an uncluttered hyperlink. It's an underlined term that begins with capital letters. It provides notice of the legal significance, that by signing up, you agree to those terms of use. It's directly above an action button, which has that natural flow. And it's similar to some of those post-Keyball decisions. We cited or filed a 28-J letter, recent decision, Bender in the Northern District of California from August. Similar, you know, the district court focused on the fact that we have just underlining here, and that's, underlining is not enough. But again, I think if you look at the total circumstances, and in Bender, it was also two separate login pages. So if the court's concern is with that telehealth, that doesn't, that's not dispositive here. We have that second step, where she was provided notice and access to the participant terms through that creating of an account. And again, the fact that it was, you know, multi-step is not dispositive of the case here. And if you contrast- You said step two, if you click on that, you then, you click on the terms of use button, and then it takes you where? To this table of contents, basically? Yes. So, and that was something that the district court brought up and seemed to focus on as well. And I think that's a bit of a misnomer or red herring here. It seems to be a focus on the, whether we use the word participant agreement or use the word terms of use. And I disagree with the district court that we didn't provide any evidence of that. We submitted a declaration under penalty of perjury that it did go to a table of contents. And that's in our declaration that was submitted as part of our briefing in the underlying case. But the other thing is that the district court had in front of it a sample from plaintiff's counsel, their investigation that showed that table of contents. Now Ramirez characterizes that as a copyright policy, which is not correct at all. If you actually look at that screenshot, which is at ER 91, it says in a box right at the very top, terms. Copyright policy just happens to be one of those terms. So does the participant agreement. There's a subscriber terms. So saying that it is a copyright policy is not correct. And again, that's reemphasized by the actual participant agreement, which says in the very first paragraph, anyone who uses our services accepts the terms and conditions that by using these services, you're bound by those. And I will yield the rest of my time for rebuttal unless the Court has anything. All right. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I think the line of questioning was focused on the right issues with the flow of the transaction here. Can I have you start at the notice at step two with the table of contents? How does it work? Sure. So one issue that we have with ER 139 is the record is devoid of how it works because defendant failed its burden under this Court's precedent in Jackson v. Amazon to submit how it works. It is true that the defendant. But there's a representative sample. Correct. It is true that they put in a declaration that described the process, but there was no actual evidence showing us how it worked. Now we, although it was not our burden, went ahead and did that and submitted a declaration. And how it works is the very first page that you see is a copyright policy. That is the first page that you see. It's in the record at ER, I believe it was 91, but yes, 91, ER 91, the very first page that you see is a copyright policy. It is true that there is a list of terms on the side here or headers, I should say, that list things like disclaimer, subscription terms, participant agreement, so on and so forth. But that's not the very first page that you're brought to. The very first page you're brought to is the copyright policy. Okay. So is that a problem, though? I mean, that you have to go from one page and you see it on the table of contents and you could click on the thing that says participation agreement? It's not a dispositive factor, but it's certainly an issue in the context of the entire transaction here. But of course, this assumes that ER 139, the step two screen, as I call it, even constitutes adequate consent. And under this court's precedence, it does not. And I've prepared a little sheet, so to speak, of all the problems here. So first, it fails under Berman because the hyperlink is not conspicuous based on font size, text size, placement, et cetera. And I understand that my adversary says that those precedents are being washed away, but I don't believe that's true. And I think the Cruz case that we cited in a 28-J letter from the California Court of Appeal from just a few months ago confirms that. At least California— I mean, it's fairly conspicuous, though, right? I mean, it's right above the—it says terms of use, it's clearly hyperlinked, it's black and white, and it's right above the create an account. So, I mean, we've seen worse. Sure. There are worse, but there are much better as well. I mean, I think we can look at Chabola. The language is problematic, too, and this is the same issue you had in Chabola. What does it mean to, quote, sign up? Does creating an account sign you up? And that is the exact same language in the Chabola case that this court found was ambiguous and unclear as to what the action the user was taking. Well, what is the difference between step one and step two? What are you doing at each step? At step two, you're creating an account. At step one, you are finding a doctor. So no step— Step one relates to health care consent, essentially. I mean, it's health services. The question I'd asked earlier, Ms. Frye, was the first step has to do with—it says telehealth. It has to do with health matters, not a participation agreement, essentially. That's correct. We agree with that. And we would also note, so that I can put this out there on the record for your consideration, even if you go to 122, the so-called telehealth consent, again, it says on the third paragraph, from Muesli's full terms and conditions, please visit the terms page or click the link provided below. There is no link below. So that further adds to the confusion that is this underlying terms page a link or is there a link below? There is no link below. So a user sees that and unclear how they can get there. If step one has a lot of problems but step two is better, is there a relationship between the two steps? Could we focus on step two and say, well, that's—that one is fine? I mean, I suppose, although I do think the overall context of the transaction matters, a user here understands that, okay, I've consented to some sort of a telehealth consent, which, by the way, I don't concede anybody consented to that because that's a pre-checked box. But everybody who's at step two has already gone through step one. You have to go through step one to get to step two? That's correct. But you don't have to check the I agree box. It's pre-checked for you. So you would have to affirmatively uncheck it, which is also a problem under this Court's precedence, under Godin, most recently. But assuming for the sake of argument that we get to step two and we've agreed to step one, step two is still littered with problems, those problems that I went over, Berman, the placement, Cruz supporting Berman, Chabola, Godin, what does it mean to sign up? And then also this Court's precedent recently in Plata v. Land's End. The link does not take you to the terms of use. It takes you to a copyright policy, maybe. We don't know because the defendant didn't even show us what it looks like. They just submitted a declaration that describes it. And we don't really know for sure, but presumably at the notice at step two, when you click on the terms, it's not a scrolling situation, right? You have to click on each individual tab. That's my understanding, yes, although, again, we don't know for sure because the defendant failed to put that into the record, which I think is dispositive of the entire thing under your Court's precedents in Jackson v. Amazon. I thought the defendant says, you know, we put in an affidavit that swears to that. They put an affidavit that generally describes the process. That's a far cry from showing what the process looks like. So moving on then, there's also a problem here, and the District Court did not reach this because the District Court concluded correctly that the notice was not conspicuous. But even if I were, if your honors were to disagree with that, there's no manifestation of assent here. And that is an independent basis to affirm the District Court's decision. In the first instance, as I mentioned, step one has a pre-checked box. Pre-checked boxes under this Court's precedent in Gudon are not a manifestation of assent. And under the second step, you still have the problem of signing up, which as this Court held in Chabola and then again in Gudon is, I don't want to use the term magic words. I understand the Court doesn't want magic words, but it's unclear. If it had said by creating an account, that might be a better argument for the defense, but it doesn't say that. It says by signing up, and then it says create an account. It's unclear what relationship those two have. So I don't believe there's a manifestation of assent, and I believe that's an independent basis under this Court's precedents, most recently in Chabola and Gudon, to affirm the District Court's ruling. Additionally, turning to the actual participant agreement. So even if a user were to find this participant agreement after going through a maze of terms, the participant agreement does absolutely nothing to highlight or call to the user's attention that it even contains an arbitration clause. The arbitration clause is buried under a header entitled applicable law. And this Court's precedents also indicate that arbitration clauses need to be called out and made clear to consumers that they are agreeing to them, which usually the defendant fails to do here. I'd also note— That was, I gather, the purpose of your study in the recent opinion six weeks ago in Cruz, I guess. Your point about print was half the size, or there was something that was just buried in the Cruz case as well. That was the reason you studied that under Rule 28, is that right? That's one of the reasons, yes. And I'm glad Your Honor asked that question because I think it bears repeating. This Court is tasked with applying California law to this question. This is an issue of California contract law, and we know how the California courts think because Cruz just told us a few months ago. So to any extent that there's a question of whether CHEBOLA is being, as my adversary said, kind of rolled back, I think Cruz went ahead and dispelled that notion that the California courts are not construing it that way, and this Court's job here is to apply California law. Finally, I would note that I think defendant focuses on the nature of the relationship, and because it is some sort of a telehealth relationship, there's an understanding of a continuing relationship and an understanding of some contractual agreement. Fair enough. We don't dispute that, but it is not a dispositive factor under California law, and I think that's where the defendant gets in where its argument fails, and we cite a number of cases in our briefing showing that under California law that is simply not a dispositive factor, and it's a factor that the District Court considered, noted weighed in the defense's favor, but still held the other factors weighed in our favor, and I think that's a perfectly permissible ruling under California law and something that this Court should affirm. With that, I will rest on the papers. Thank you. Thank you, Counsel. I want to briefly address the Cruz case since that came up, the recent decision. I don't think Cruz changed anything, and I think if you look at Cruz, it's very distinguishable from the case here. That case involved a purchase of a Kate Spade handbag, and the notice was provided on the checkout page, and it was a two-column webpage that had advertisements for gift cards. It had links to stylists for handbags and clothing. The Court noted that the notice was in barely legible gray font and even said they had to squint to see it. Very different situation than what we have here where we have clear, uncluttered hyperlinks that go to this agreement. To the point as to the steps, you absolutely, if the Court finds issue with the telehealth consent, you absolutely can reverse the District Court based on step two, and that is the Kavanaugh case where the Court did exactly that. The Court said, okay, this first step is a little bit problematic, but you also have this second step where you're creating this account, and that gave clear notice. The District Court had a problem with was just the evidentiary showing on this piece of it, and the judge said, well, Muesli doesn't provide the hyperlink, it doesn't attach a screenshot or provide any other evidence to describe this page any further. So is that accurate? I don't think it's totally accurate, because like I said, we did submit evidence of it. What was the evidence, though? Through the declaration. The other thing is that the Court – Right, but the judge is saying that you didn't provide the hyperlink for the table of contents. Is that true? That is correct. How about attach a screenshot of it? That was not part of the record. But the Court did have in front of it another screenshot, which it did consider, which was presented by Ramirez, and the Court looked at that, and again, it's not a copyright policy. It's, you know, my opponent conveniently ignores that it says in a big box right up in the middle, terms. And again, the fact that it was presented in a table of contents is not by itself problematic. If there's nothing else, we'll rest on our papers. Thank you, Your Honors. Thank you, counsel, to both sides for your argument. The matter is submitted.
judges: NGUYEN, BRESS, Bennett